**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| NOVO NORDISK INC.,<br>Plaintiff,<br>vs.<br>LINK PHARMACY LLC,<br>Defendant. | Civil Action No. 3:25-CV-02061-E |

**DEFENDANT LINK PHARMACY LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF NOVO NORDISK INC.'S MOTION FOR ENTRY OF PROTECTIVE ORDER**

Defendant Link Pharmacy LLC ("Link" or "Defendant") opposes Plaintiff Novo Nordisk Inc.'s ("Novo Nordisk" or "Plaintiff") Motion for Entry of Protective Order (ECF No. 62) and requests that the Court enter a Protective Order that includes in the definition of "Party": (1) up to three in-house counsel of the current operating pharmacy's ultimate parent entity; and (2) a senior management officer of the operating pharmacy entity—all of whom will be subject to the confidentiality restrictions of the Protective Order.

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Novo Nordisk Inc. ("Novo") filed this action on August 4, 2025 against a single defendant—Link Pharmacy LLC—alleging violations of nine states' unfair competition and consumer protection laws related to the compounding and dispensing of

semaglutide-containing compounded drugs.[1] The conduct at issue in Novo's Complaint includes the period of 2022 to the present.

On October 29, 2025, Link moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), challenging Article III standing and the sufficiency of Novo's claims. That motion was fully briefed on December 19, 2025 and remains pending before this Court. On January 13, 2026, the Court issued a detailed Scheduling Order. *See* ECF No. 29. That Order sets a three-week trial beginning October 5, 2027.[2] *Id*. The Scheduling Order sets the deadline to amend pleadings as July 31, 2026, and set the deadline to mediate by no later than May 22, 2026. *Id*. The parties conducted a mediation on May 13, 2026.

Notably, two months ***prior*** to Novo's initiation of this lawsuit, on June 18, 2025, Link Pharmacy LLC sold its assets to a Delaware limited liability company called LT Pharmacy Buyer, LLC ("LT Buyer"), which itself is ultimately owned by Delaware corporation OpenLoop Health, Inc. ("OpenLoop"). Link disclosed these parties' interests

---

[1] Novo's Texas common-law unfair competition claim (Count 8) should be dismissed. Courts in the Southern District of Texas have repeatedly dismissed materially identical claims, holding that a private litigant cannot recast alleged violations of the Texas Food, Drug, and Cosmetic Act as a common-law unfair competition claim because the statute's comprehensive enforcement scheme forecloses private enforcement. *See e.g.*, *Eli Lilly & Co. v. Revive RX, LLC*, 812 F. Supp. 3d 708, 723–29 (S.D. Tex. 2025); *Eli Lilly & Co. v. Empower Clinic Servs., LLC*, No. H-25-3464, slip op. at 32–34 (S.D. Tex. Apr. 29, 2026) (same).

[2] Because Link's Answer has not yet been filed, Link may still demand a jury trial. Fed. R. Civ. P. 38(b).

in the potential financial outcome of this case in its October 30, 2025 Rule 7.1 Disclosure Statement filed with the Court. ECF no. 15. Link also provided additional details regarding various entities' relationships to Link in an Interrogatory Response dated April 27, 2026—including that the entity currently operating the business called Link Pharmacy is LT Pharmacy Buyer, LLC—***not*** the Defendant, Link Pharmacy LLC. *See* Excerpt of Link's April 27, 2026 Partial Interrogatory Response, attached as **Exhibit A**.

Notwithstanding the pending motions and the lack of any action by Novo to address Link's asset sale, Link has engaged in good-faith efforts to move the case forward including meaningful participation in the mediation. Link communicated its willingness to continue producing responsive materials upon entry of an appropriate protective order governing the parties' confidential and commercially sensitive information. Moreover, Link produced documents responsive to Novo's pre-mediation discovery requests, including information regarding the volume of compounded semaglutide—for the time periods both before and after Link's asset sale to LT Buyer.

Consistent with those efforts, counsel for Link and Novo engaged in multiple meet-and-confer discussions and written exchanges regarding both discovery and the terms of an agreed protective order. While the parties were able to reach agreement on the vast majority of provisions, they were unable to resolve a single discrete issue concerning the scope of who may access protected materials.

## II. ISSUE STATEMENT

The sole dispute before the Court is narrow: whether, in light of the disclosed relationships among the entities associated with the named Defendant Link Pharmacy LLC, and in light of the fact that the entity currently operating the business known as Link Pharmacy is LT Buyer (owned by OpenLoop), the definition of "Party" in the proposed Protective Order should include designated in-house counsel of OpenLoop and a single senior officer (Mr. Jon Lensing) of the operating pharmacy, LT Buyer.

## III. SUMMARY OF THE ARGUMENT

The crux of this dispute is more complicated than Novo presents. It is not simply that Novo believes allowing a non-party would improperly expand access to discovery materials. *See* ECF No. 62 at 3. Novo's argument ignores the practical realities of this case—realities ***Novo*** created and has since attempted to exploit.

On August 4, 2025, Novo sued Link Pharmacy LLC. But Link Pharmacy LLC is not the entity currently operating the pharmacy. Instead, pursuant to the June 18, 2025 asset sale, OpenLoop-subsidiary LT Buyer operates the pharmacy today. Link Pharmacy LLC today has no employees or operations and is a shell corporation with no assets. The vast majority of the individuals with the institutional knowledge necessary to defend this case are employed by LT Buyer or OpenLoop.

Link Pharmacy LLC put Novo on notice of this at the outset. In its October 30, 2025 Rule 7.1 Disclosure Statement, Link identified LT Buyer and OpenLoop as

entities with a financial interest in the outcome of the case. *See* ECF No. 15. Link Pharmacy LLC issued discovery responses verified by the Chief Operating Officer of LT Buyer, and Novo relied on those very responses in its own Motion. *See* ECF 62-3 at 78. During meet-and-confer discussions, Link expressly explained that any protective order must account for the reality that the personnel necessary to defend this case, including in-house counsel, reside at the operating entity's (LT Buyer) parent company, OpenLoop.

In the course of protective order negotiations, on April 16, 2026, Novo represented that it would pursue joinder of OpenLoop, which would have resolved the dispute regarding the protective order language entirely. *See* April 16, 2026 email, attached as **Exhibit B**. Based on these disclosures and Novo's own recognition of the issue, Link reasonably understood that – even though Novo has no supportable claim against LT Buyer or OpenLoop – Novo would nonetheless seek to amend its pleadings to name the current operating entity—LT Buyer. Consistent with that understanding, Link's negotiations focused on ensuring that the ultimate Protective Order would permit in-house counsel of LT Buyer's ultimate parent entity, OpenLoop, to access confidential discovery material necessary to defend the case. Moreover, as Link's counsel understood that LT Buyer was going to be named, then by virtue of being a defendant, LT Buyer's "senior management personnel," Mr. Jon Lensing, would be permitted access to confidential discovery information under

Novo's own preferred version of the "Party" definition in the protective order. Thus, Link agreed to drop the need for senior management personnel to access Novo confidential information.

But Novo's position did not hold. Instead, by April 30, 2026, Novo retreated, stating it was now uncertain whether it would add any parties, while simultaneously and purposely restricting access to confidential discovery material by those who are necessary to defend the litigation. *See* April 30, 2026 email, attached as **Exhibit C**. Novo later represented on May 15, 2026 that it was "reviewing options" as to whether to add LT Buyer. *See* May 15, 2026 email, attached as **Exhibit D.** It nevertheless proceeded with this Motion—seeking to exclude OpenLoop's in-house counsel—without resolving the threshold question of who it actually intends to sue. ECF no. 62.

The reason for this indecisiveness is apparent—Novo naming LT Buyer or OpenLoop would destroy complete diversity. Plaintiff is a Delaware corporation, and both LT Buyer and OpenLoop are also Delaware corporations. Rather than forego its chosen federal forum, Novo has apparently elected to proceed against a non-operating shell entity.

The reality is that the documents and information responsive to Novo's discovery requests—including the data, and operational knowledge at issue—reside primarily with the operating entity LT Buyer and its ultimate parent OpenLoop.

Novo is thus necessarily seeking discovery from Link that depends upon the cooperation and knowledge of those entities.

Novo cannot have it both ways. It must choose a coherent path forward. If Novo wishes to proceed in federal court against Link, it must accept the consequences of that choice—namely, that discovery will necessarily be limited to the pre-acquisition period (through June 18, 2025), and that the Protective Order must permit access by in-house counsel of OpenLoop, the entity that now holds the relevant information and personnel. Alternatively, if Novo elects to name the currently operating entity LT Buyer (and its parent, OpenLoop)— the present dispute about the "Party" definition disappears because the Protective Order would then naturally apply to the named parties in interest.[3] That would require, however, Novo to proceed in state court as this Court would lose subject matter jurisdiction.

Simply stated, Novo cannot avoid naming the operating entities to preserve this federal forum while simultaneously excluding those same entities from access to the very type of information needed to defend and assess this dispute. Novo should not be permitted to leverage the corporate structure it has chosen to ignore as both shield and a sword, placing Link at a severe and unwarranted disadvantage.

## IV. FACTUAL BACKGROUND

[3] That is, assuming Novo can actually articulate any viable claims against either entity. Both LT Buyer and OpenLoop explicitly reserve and do not waive their right to challenge Novo's potential future amended complaint on any and all grounds.

Novo's Motion relies on aspects of the parties' corporate structure while ignoring the implications of that structure. ECF No. 62. Indeed, Novo has been on notice of this corporate structure since at least October 30, 2025, when Link filed its Rule 7.1 Disclosure Statement identifying the interested parties. ECF No. 15. Link's discovery responses, served on April 27, 2026 disclosed the full ownership chain:

> OpenLoop Health, Inc. ("OpenLoop") is a Delaware corporation that operates a white-label telehealth platform. LT Pharmacy Holdco 1 LLC and LT Pharmacy Holdco 2 LLC are Delaware limited liability companies. LT Pharmacy Holdco 1 LLC is a direct subsidiary of OpenLoop. LT Pharmacy Holdco 2 LLC is a direct subsidiary of LT Pharmacy Holdco 1 LLC. LT Pharmacy Buyer LLC is a Delaware limited liability company and is a direct subsidiary of LT Pharmacy Holdco 2 LLC. On June 18, 2025, LT Pharmacy Buyer LLC acquired the assets of Link Pharmacy LLC and does business as Link Pharmacy.

**Exhibit A**. Moreover, Novo's counsel, sent correspondence asking whether OpenLoop would agree to be named as a defendant in this case. *See* April 9, 2026 email, attached as **Exhibit E**. Counsel for Link declined. Novo's counsel then stated on April 16, 2026 that it would name OpenLoop as a defendant regardless—only to reverse course on April 30, 2026. **Exhibits B and C**. On May 15, 2026, Novo's counsel indicated that it was "currently reviewing options" as to "whether Novo intends to seek to amend the case caption to name the LT Pharmacy Buyer LLC ***as a party***". **Exhibit D.**

Although Novo has until July 30, 2026 to name additional parties, to date, it has not added LT Buyer or OpenLoop as a party—almost certainly because doing so

would destroy diversity jurisdiction thereby eliminating the subject matter jurisdiction of this Court. Until Novo definitively determines who to sue, the terms of the Protective Order that Novo has brought to this Court remain a moving target that could be rendered moot.

## V. ARGUMENT

A party seeking a protective order carries the burden of showing good cause for its issuance. Fed. R. Civ. P. 26(c). Discovery rules are not intended to be used as a tactical weapon to impose asymmetrical burdens. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (protective orders are grounded in legitimate confidentiality interests). Generalized concerns about competitive harm are insufficient to justify restricting access. A party seeking a protective order must demonstrate "good cause" with specific facts, not conclusory assertions. Fed. R. Civ. P. 26(c); *see also In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (requiring a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements").

Novo cannot meet that burden for its preferred version of the Protective Order for four independent reasons. First, the practical realities of this case require inclusion of OpenLoop's in-house counsel, because Link today is a non-operating entity with no operating personnel (in-house counsel or otherwise), no operations, and inadequate institutional knowledge necessary to meaningfully respond to

Novo's discovery requests and fully assess Novo's own produced discovery. Second, Novo's asserted risk of competitive harm is speculative and unsupported by any particularized showing of risk. Third, Link's proposed modification is narrowly tailored, limited to a small number of individuals who will be subject to the Protective Order's safeguards. Fourth, the broader litigation context—including the parties' mediation efforts and Novo's own strategic decisions—confirms that Novo's position would impair Link's ability to defend and resolve this case. For each of these reasons, Novo's motion should be denied.

### A. The Practical Realities of This Case Require Inclusion of OpenLoop In-House Counsel

Novo's claim that Link will not be disadvantaged because other individuals may access discovery misstates both the record and the practical realities of this case. ECF No. 62 at 4. Novo points to provisions of the Protective Order permitting disclosure of "Confidential" information to a limited number of non-lawyer employees of a Party—but those provisions assume that such employees exist. *Id.* Here, they do not. Link is a non-operating entity with no operating employees and inadequate infrastructure capable of producing and reviewing discovery. Its assets were acquired pre-suit by LT Buyer, which now operates the pharmacy. The individuals who possess the relevant documents, evaluate the merits of this case, and direct the defense are by and large employees of LT Buyer and/or OpenLoop.

Nor is the answer to require Link to "hire in-house counsel," as Novo suggests. ECF No. 62 at 4. That argument fails as a matter of both logic and law. Link does not lack in-house counsel as a matter of strategic choice; it lacks in-house counsel because it is a ***non-operating entity with no ongoing business***. Forcing a non-operational entity to create an artificial internal legal function solely for purposes of defending this litigation is absurd. In fact, Novo's suggestion serves as an admission that, under Novo's proposal, Link would otherwise be left without any ability to participate in its own defense. That result is not accidental—it is a product of Novo's litigation strategy. Novo ***chose*** to sue a non-operating entity while ***declining*** to name the entities that actually hold the information and today operate the pharmacy at issue. Novo cannot now leverage that choice to restrict access in a way that prevents Link from mounting a meaningful defense.

Courts evaluating protective orders look to the practical realities of the litigation, not formalistic distinctions. *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (requiring courts to balance risk against the prejudice to a party's ability to litigate); *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468–69 (Fed. Cir. 1984) (rejecting restrictions based solely on status rather than actual risk). Novo's approach would force Link to either defend this lawsuit without meaningful client involvement, or manufacture in-house counsel for a non-operating

shell. Rule 26 does not require either result; it prohibits restrictions that impair a party's ability to defend itself absent a showing of actual harm.

Novo's objection that OpenLoop's in-house lawyers are "non-parties" elevates form over substance. ECF No. 62 at 3. The Protective Order's Exhibit A already contemplates a way to bind affiliates and any individuals who execute the required acknowledgment form; Novo identifies no principled basis to categorically exclude a small number of OpenLoop employees where those safeguards could apply.

Nor does Novo make the showing Rule 26 requires. Generalized assertions about corporate separateness and competition are insufficient. Courts reject categorical exclusions of in-house counsel and require a fact-specific inquiry into actual risk. *U.S. Steel Corp.*, 730 F.2d at 1468–69 ("access should be denied or granted on the basis of each individual counsel's actual activity … without regard to whether … in-house or retained"). Status alone cannot justify denial of access. Courts within this Circuit apply the same rule. In *Luv N' Care LTD. v. Laurain*, the court rejected a categorical bar and held that access must be determined on a counsel-by-counsel basis, weighing any risk of disclosure against the impairment to a party's ability to litigate. *Luv N' Care LTD. v. Laurain*, no. 16-00777, 2017 WL 11449679 *3–4 (W.D. La. June 14, 2017). Where no particularized risk is shown, exclusion is improper. *Id*.

Novo's position ultimately collapses under its own logic. It seeks discovery into operations and information that reside with LT Buyer and OpenLoop, while simultaneously seeking to bar the very individuals who possess that knowledge from accessing Novo's discovery. The Federal Rules do not permit that asymmetry. Denying those individuals access would not protect confidentiality—it would effectively deprive Link of the ability to defend itself.

**B. Novo Nordisk's "Competitive Harm" Argument Is Speculative and Unsupported**

Novo argues that permitting OpenLoop's in-house counsel to access discovery would confer a competitive advantage because OpenLoop's "owns and operates other companies that ***may*** … distribute or sell compounded semaglutide." ECF No. 62 at 4 n.3 (emphasis added). That assertion is entirely speculative. Novo identifies no specific OpenLoop affiliate's operations that would be any different than the supposed competition that Link presents. It is a distinction without a difference and pure conjecture, which is not enough. *Garcia v. Peeples,* 734 S.W.2d 343, 345 n.1 (Tex. 1987) (noting that Rule 26(c) requires a showing of "annoyance, embarrassment, oppression, or undue burden," supported by specific facts). Under Rule 26(c), the burden is on Novo to make a particularized showing of harm, supported by specific facts—not generalized concerns. Courts consistently reject attempts to restrict access to confidential information based on hypothetical competitive risk. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468–69 (Fed.

Cir. 1984) (rejecting denial of access based on "general assumption[s]" and requiring a counsel-specific inquiry); *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 503 (D. Kan. 2007) (rejecting exclusion of in-house counsel where the movant failed to show involvement in competitive decision-making and emphasizing that protective orders—not categorical bans—address confidentiality concerns). Novo makes no such showing here.

Courts applying these principles routinely reject the precise argument Novo advances. In *Luv N' Care LTD. v. Laurain*, the court refused to exclude in-house counsel based on generalized competitive concerns, holding that access decisions must be made on a counsel-by-counsel basis and must weigh any risk against the prejudice to the opposing party's ability to litigate. 2017 WL 11449679 *3–4. Where the movant fails to demonstrate that ***specific counsel pose a real risk of misuse***, exclusion is improper. *Id*. That is exactly the situation here.

Novo's position also fails on its own terms. It seeks to bar access to Novo's discovery responses—the very materials that must be reviewed by the individuals with knowledge of the underlying operations. That distinction is dispositive. Novo cannot seek discovery into functions performed by LT Buyer and OpenLoop while simultaneously preventing those same individuals from accessing the materials necessary to respond. That is not a confidentiality concern—it is a litigation tactic.

And Novo offers no evidence of competitive harm to justify it, only speculation. Speculation is insufficient to support a categorical exclusion.

Moreover, the Protective Order itself contains robust safeguards as individuals must sign the "Acknowledgment and Agreement to Be Bound," subjecting them to the jurisdiction of this Court and exposing them to sanctions for any misuse. In-house counsel are further bound by their professional ethical obligations, including duties of confidentiality. Section 9 of the Protective Order already prohibits disclosure to competitors. All of these protections, individually and combined, are more than sufficient to address any hypothetical competitive concern.

**C. Link's Proposal Is Narrowly Tailored and Appropriate**

Link does not seek unfettered access for all OpenLoop employees. Link's proposed language is limited to three in-house counsel at OpenLoop and Jon Lensing, an LT Buyer corporate officer. These in-house counsel are attorneys, bound by professional ethical duties. All of the in-house counsel and Mr. Lensing will be required to sign the Acknowledgment and Agreement to Be Bound. They will each be subject to the jurisdiction of this Court. They will each be bound by the non-disclosure and non-competition provisions of the Protective Order.

**D. The Broader Litigation Context Supports Link's Position**

As outlined above, Novo chose to sue only Link despite the fact it is a non-operating entity with no operational employees and no in-house counsel. It likewise

chose ***not*** to name LT Buyer or OpenLoop. Novo cannot now use the Protective Order to restrict access in a way that prevents Link from meaningfully defending itself.

That prejudice is not theoretical—it is already impacting the parties' ability to resolve this case. The Court set a May 22, 2026 mediation deadline, with a party addition deadline of July 30, 2026. ECF no. 29. In advance, the parties agreed to limited, targeted discovery to facilitate settlement. Link complied with that process, producing documents on Outside Counsel Attorneys' Eyes Only basis, from both Link Pharmacy LLC ***and*** LT Buyer, notwithstanding that LT Buyer is not a party to this litigation. In a further effort to proceed cooperatively, Link also permitted Novo's own in-house counsel to review these materials in anticipation of mediation.

Novo's position is also contradicted by its own conduct during mediation. Link appeared at mediation with personal counsel for Link's registered manager, as reflected in the Texas Secretary of State records. Novo objected to his participation on the ground that he was not a "party," yet at the same time demands discovery into operations and conduct that reside entirely with non-party entities. That inconsistency underscores the flaw in Novo's position. The individuals and entities necessary to evaluate liability, assess risk, and resolve this case are not limited to the nominal defendant. Novo cannot both (1) insist on litigating against a non-operating entity and (2) exclude from participation the very individuals required to defend and

resolve the case. The Federal Rules do not permit such a formalistic approach where it would impair the fair and efficient resolution of the dispute.

Novo now seeks to impose a restriction it has not itself observed—one that would exclude the individuals most capable of evaluating the evidence and directing Link's defense. That asymmetry underscores the lack of any genuine confidentiality concern and confirms that Novo's position is not about protecting sensitive information, but about restricting access to those with the knowledge necessary to respond to its claims.

Any resolution of this case will necessarily involve the business personnel of LT Buyer and in-house counsel of OpenLoop, who must evaluate risk as the information needed to evaluate risk and any potential resolution regarding future conduct resides with LT Buyer, not Link. Excluding those individuals from reviewing discovery undermines the very purpose of the parties' agreement and impedes meaningful settlement discussions. Courts recognize that discovery limitations are improper where they interfere with a party's ability to evaluate and resolve claims.

In short, Novo created the very structure it now invokes as a basis for exclusion. The Federal Rules do not permit a party to such gamesmanship.

## VI. CONCLUSION

For the foregoing reasons, Link requests that the Court include in the definition of Party, in-house counsel of OpenLoop and Jon Lensing, the LT Buyer corporate officer. A Proposed Protective Order is attached as **Exhibit F**.

Dated: May 27, 2026

Respectfully submitted,

*/s/ Shannon E. McClure*
Shannon E. McClure (admitted *pro hac vice*) BLANK ROME LLP
One Logan
Square 130
N. 18th
Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555
Email:
shannon.mcclure@blankrome.com

Rachael G. Pontikes (admitted *pro hac vice*) BLANK ROME LLP
444 W. Lake St., Suite 1650
Chicago, Illinois 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601
Email: rachael.pontikes@blankrome.com

Leon Carter
Linda R. Stahl
CARTER ARNETT PLLC
8150 N. Central Expressway, Suite 500
Dallas, TX 75206
Telephone: 214-550-2112
Fax: 214-550-8185
Email: lcarter@carterarnett.com
lstahl@carterarnett.com

*Attorneys for Defendant Link Pharmacy LLC*

## CERTIFICATE OF WORD COUNT

I certify that the body text of this document, including footnotes, contains 3,954 words.

*/s/ Shannon E. McClure*