**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| NOVO NORDISK INC.,<br><br>Plaintiff,<br><br>v.<br><br>LINK PHARMACY LLC,<br><br>Defendant. | Civil Action No. 3:25-CV-02061-E |

**PLAINTIFF NOVO NORDISK INC.'S REPLY IN SUPPORT OF**
**<u>MOTION FOR ENTRY OF PROTECTIVE ORDER</u>**

Defendant Link Pharmacy LLC ("Defendant") refuses to engage in further important discovery until Novo Nordisk Inc. ("Novo Nordisk") agrees to allow nonparties to access its Confidential or Highly Confidential information. Novo Nordisk cannot agree to this unreasonable and unprecedented approach and respectfully requests that the Court grant Novo Nordisk's Motion for Entry of Protective Order ("Motion" or "Mot."; ECF No. 62) as submitted.

## I. Background

Much of the history relevant to this Motion was set forth previously. (ECF No. 62 at 1–4.) However, since Novo Nordisk filed that Motion, Defendant has continued to obfuscate its corporate structure. On the eve of the parties' mediation, and after Novo Nordisk filed its Motion for Entry of Protective Order, Defendant's counsel informed Novo Nordisk's counsel—for the first time—that Defendant Link Pharmacy

LLC is purportedly "defunct."[1] Novo Nordisk's counsel immediately responded that Defendant had never disclosed this before.[2]

The following day, at the parties' mediation, Defendant failed to bring an "executive officer" or even an employee to the mediation. This failure was a direct violation of this Court's Scheduling and Mediation Orders. (ECF No. 29 at 7; ECF No. 45 at 2.) Instead, Defendant's "company representative" was the personal attorney of David Lindsey, the owner of Link Pharmacy LLC.[3] Now, in its Opposition to Novo Nordisk's Motion for Entry of Protective Order ("Opp."), Defendant says for the first time that it "has no employees or operations and is a shell corporation with no assets," Opp. at 4, which is presumably why it did not comply with the Court's Orders.[4] Defendant's Initial Disclosures from March 16, 2026 list David Lindsey as a current employee of Link Pharmacy LLC.[5] But less than three weeks later, on April 6, 2026,[6]

---

[1] Ex. A, Email from Defendant's Counsel on May 12, 2026, at 3:54 p.m.

[2] Ex. B, Email from Novo Nordisk's Counsel on May 12, 2026, at 4:50 p.m.

[3] *See* William Moore, Of Counsel at Platt Richmond PLLC (last accessed June 9, 2026), https://plattrichmond.com/attorney/william-moore/.

[4] The Court's Mediation Order, in which it specified that "each *party*—which is not a natural person—must be represented by an executive officer (other than in-house counsel) with authority to negotiate a settlement . . .", issued on February 18, 2026. (ECF 45 at 2 (emphasis added)). In the three months thereafter, Defendant never signaled any purported inability to comply with it, much less seek relief. In keeping with a concerning pattern of behavior, Defendant chose instead to simply ignore the Court's order, just as it chose to ignore the Court-ordered deadline for Initial Disclosures (ECF 24 at 6 set the R. 26(a) Disclosure deadline for January 21, 2026; Defendant served its R. 26(a) Initial Disclosures on March 16, 2026), and the Court-ordered deadline for email discovery disclosures (ECF 29 at 5 set a deadline of 21-days from Initial Disclosures, or February 11, 2026; Defendant served its email disclosures on April 6, 2026). Suffice to say, Defendant's consistent disregard for Court orders does nothing to lessen Novo Nordisk's concern about Defendant's demand to share Novo Nordisk's Confidential or Highly Confidential Information with nonparties.

[5] Ex. C, Link Pharmacy's Initial Disclosures at 1–2, March 16, 2026.

[6] Ex. D, Link Pharmacy's Email Disclosures at 1–2, April 6, 2026.

Defendants claim he is a "former employee."[7] Notably, neither disclosure said that Defendant has *no* employees.

From the time Novo Nordisk filed its Complaint on August 4, 2025, until the day before mediation on May 12, 2026, Novo Nordisk was unaware that Defendant was allegedly "defunct." Notably, Defendant made no mention of this purported fact in its dismissal briefing on October 29 and December 19, 2025. However, in its Opposition to this Motion, Defendant claims that it "put Novo on notice of this at the outset." Opp. at 4. But the vague reference to "this" is telling. Neither Defendant's Certificate of Interested Persons / Disclosure Statement nor its interrogatory response on April 27, 2026, state that Defendant is "defunct." Rather, Defendant's Certificate of Interested Persons / Disclosure Statement merely states that other entities have a financial interest in this case. (ECF No. 15 at 1.) And Defendant's interrogatory response only states that "LT Pharmacy Buyer LLC acquired the assets of Link Pharmacy LLC *and does business* as Link Pharmacy." (ECF No. 67-2 at 4 (emphasis added).) Neither of these statements means that Defendant is defunct or has no

[7] Further emphasizing Defendant's obfuscation of its corporate structure, its Initial Disclosures list David Lindsey as a current employee of Link Pharmacy LLC, and Edward Ming and Don Mordas as current employees of LT Pharmacy Buyer LLC, but describes all three as having identical information about "Link Pharmacy's operations and business practices; . . . communications with patients and prescribers; the allegations in the Complaint and any assertions and/or defenses from Link's future Answer and Affirmative Defenses." Ex. C at 2. These disclosures underscore that Defendant has interchangeably referred to both entities when convenient.

employees. In fact, Defendant communicated the opposite by stating that Link Phamacy is still conducting business.[8]

Defendant now wishes to halt discovery until Novo Nordisk agrees to allow its nonparty, purported parent companies to access the parties' Confidential and Highly Confidential information. As addressed in Novo Nordisk's Motion, that arrangement is not appropriate because it would create a material competitive risk for Novo Nordisk and undermine the negotiated safeguards of the Protective Order.

To be sure, some of the nonparties that Defendant wishes to include in the definition of "Party" may eventually be proper parties in this case. But for now, Link Pharmacy LLC is the named Defendant, and Defendant has not provided adequate information regarding these other entities and their relationship to Link Pharmacy

[8] Moreover, it is far from clear that Link Pharmacy LLC truly is, or was, "defunct" at the time Novo Nordisk filed its Complaint on August 4, 2025. Publicly available evidence undermines Defendant's belated claim. Defendant's own website remains active and continues to market its services in the same manner it did prior to the purported acquisition by LT Pharmacy Buyer LLC, with no indication of any change in corporate structure and no legal entity name other than "Link Pharmacy." *See* Link Pharmacy (last accessed June 9, 2026), https://www.linkrx.org/. Indeed, based on public communications by current and former Link Pharmacy employees, the company has flourished over the past year, processing a higher volume of prescriptions and hiring additional staff as recently as six months ago (and after Link Pharmacy purportedly became "defunct"). *See, e.g.*, LinkedIn, Madison Mayes (last accessed June 9, 2026), https://www.linkedin.com/in/mayesmadison/; LinkedIn, Link Pharmacy (last accessed June 9, 2026), https://www.linkedin.com/company/link-pharmacy-rx/people/. Link Pharmacy also maintains an active license with the Texas State Board of Pharmacy, issued on October 3, 2025, two months after this lawsuit was filed, and not set to expire until October 31, 2027. Texas State Board of Pharmacy, Texas Pharmacy License # 35885 (last accessed June 9, 2026), https://www.pharmacy.texas.gov/dbsearch/phy_zoom.asp?id=35885. Connected to that license are 31 active pharmacists and 86 actively registered technicians and trainees. *Id*. Additionally, the "Pharmacist-in-Charge" listed on the license is Edward Ming, the same individual identified in Defendant's Initial Disclosures. *Id.*; Ex. C at 2. These facts are wholly inconsistent with Defendant's characterization that it "has no employees or operations and is a shell corporation with no assets," Opp. at 4, and they further underscore why Novo Nordisk had no reason to understand that Defendant was allegedly "defunct" prior to its counsel's eve-of-mediation disclosure.

LLC. It is this information, along with other categories of information, that Novo Nordisk seeks in discovery.[9] But at bottom, the lone question presently before the Court is not whether Defendant is "defunct" or when it became so, but whether any nonparty should be permitted access to Novo Nordisk's Confidential or Highly Confidential information in this case. The answer to that question is no.

## II. Argument

Tellingly, Defendant cites *no* cases in support of its proposition that non-parties should be allowed access to Confidential and Highly Confidential information—nor could it, as Defendant is making an exceptional request. Courts routinely exclude from protective orders people involved in "competitive decision-making," or where the level of risk of disclosure of proprietary information is too great. *Indus. Print Techs., LLC v. O'Neil Data Sys., Inc.*, No. 3:15-CV-01100-M, 2016 WL 11786998, at *1 (N.D. Tex. June 23, 2016) (citing *Round Rock Rsch., LLC v. Dell Inc.*, 2012 WL 1848672, at *2 (E.D. Tex. Apr. 11, 2012)).

In fact, courts in the Fifth Circuit have issued protective orders to *exclude* attorneys of parent companies from receiving confidential information under protective orders. In *Indus. Print Techs., LLC v. O'Neil Data Sys., Inc.*, the Court excluded a parent company lawyer from receiving confidential information as a competitive decisionmaker because she reported directly to executives of the subsidiary and parent companies. 2016 WL 11786998, at *2 (N.D. Tex. June 23, 2016). Additionally, the

[9] Novo Nordisk notes that Defendant is still obligated to produce responsive documents that it possesses, even if they are also in LT Pharmacy Buyer LLC's possession.

Court found that the subsidiary company would not be harmed by the protective order, because the company "ha[d] been represented by qualified outside counsel since the commencement of th[e] litigation." *Id.*

The facts of this case are even more concerning than those in *O'Neil*. Defendant argues that Jon Lensing, the Co-Founder and CEO of OpenLoop, along with three in-house lawyers at that company, should be considered "Part[ies]" to the case under the Protective Order.[10] OpenLoop is not the parent company of Defendant. Rather, OpenLoop is the parent company of a limited liability company that manages another limited liability company that manages LT Pharmacy Buyer LLC, which, according to the Defendant, currently operates Link Pharmacy. Moreover, the limited liability company that manages LT Pharmacy Buyer LLC also owns Triad Rx, another compounding pharmacy.[11] (ECF No. 67-2 at 4.)

The CEO and in-house lawyers of a nonparty telehealth company with a "nationwide network" of unknown organizations, including another compounding pharmacy that is not a party to this case, should not be considered "Part[ies]" under this Protective Order, and should never obtain access to Novo Nordisk's Confidential or Highly Confidential information.[12] The risks of competitive harm resulting from exposure of such information to other nonparty compounding pharmacies and the potential for inadvertent disclosure of such information by receiving nonparties far

[10] OpenLoop, "Team" (last accessed June 1, 2026), https://openloophealth.com/team (listing Jon Lensing as CEO & Co-Founder of OpenLoop).

[11] Triad Rx, "Compounding" (last accessed June 1, 2026), https://www.triadrx.us/pharmacy-services/compounding.

[12] OpenLoop (last accessed June 1, 2026), https://openloophealth.com/.

outweighs the alleged harm to Defendant's ability to defend its claims in this case—harm that is at most minimal, given that Defendant is represented by competent outside counsel. *See O'Neil*, 2016 WL 11786998, at *2.

The authority cited by Defendant in arguing that Novo Nordisk failed to support concerns about competitive harm does not go as far as Defendant claims. In both cases, the courts considered whether the in-house counsel of the parties to the case—not the in-house counsel of ***nonparties***—should have access to confidential material. *See Luv N'Care LTD. v. Laurain*, No. 3:16-CV-00777, 2017 WL 11449679, at *1–4 (W.D. La. June 14, 2017); *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467–69 (Fed. Cir. 1984). Novo Nordisk agrees that some in-house counsel of the ***parties*** in this case should have access to Confidential and Highly Confidential information—as reflected in the Protective Order Novo Nordisk submitted along with the present Motion. But it does not agree to extend these privileges to the in-house counsel of nonparties (or any other nonparty employees).

Defendant asserts that it is *Novo Nordisk* who has forced this issue by refusing to add in OpenLoop or the other entities as parties. But Novo Nordisk is not compelled to add parties against which it is not currently certain it can assert claims. And Novo Nordisk is also not compelled to rely on Defendant's shifting descriptions of its corporate structure, which changed as recently as May 22, 2026.[13] Instead, the

[13] In addition to the shifting explanations set forth in the Background section above, in its latest discovery responses served May 22 (after the present Motion was filed), Defendant referred to a "Link Pharmacy Corp." that Defendant stated was formed in August 2023, which it said was "a fact known to Plaintiff." Defendant has never disclosed a "Link Pharmacy Corporation" entity in this case, nor its relationship to the Defendant. And public records (continued…)

parties should be allowed to proceed with discovery under the safety of a protective order that ensures Novo Nordisk's highly proprietary information is not disclosed to parties that are not defendants in this case. As noted, Novo Nordisk has begun to pursue discovery of Defendant and third-party discovery of certain related entities that have been disclosed. With the benefit of that information, Novo Nordisk may determine that other entities are appropriate to name as defendants, but is under no obligation to do so.

## III. Conclusion

Defendant cannot rely on its own shifting explanations of its corporate structure to compel Novo Nordisk to disclose its highly confidential information to nonparties. And Defendant cannot refuse to engage in discovery until Novo Nordisk agrees to do so. The Court should grant Novo Nordisk's Motion for Entry of Protective Order.

Dated: June 10, 2026

Respectfully submitted,

*/s/ Jonathan L. Smith*
Trevor Carolan
Texas Bar No. 24128898
5850 Granite Parkway, Suite 900
Plano, Texas 75024
Telephone: (972) 616-1700
Fax: (972) 616-1701
trevor.carolan@bowmanandbrooke.com

Randall L. Christian
Texas Bar No. 00783826

indicate that Link Pharmacy Corporation was formed in February 2022. Notwithstanding that Novo Nordisk raised this issue by letter on May 31, 2026, Defendant ignored it in its June 3 response, so this entity's relationship to this case and formation date remains unclear. This is just one more example of Defendant's shifting explanations of its corporate structure, upon which Novo Nordisk cannot and should not have to rely.

Jonathan L. Smith
Texas Bar No. 24088436
BOWMAN AND BROOKE LLP
2901 Via Fortuna Drive, Suite 500
Austin, TX 78746
Tel.: (512) 874-3800
Fax: (512) 874-3801
Randall.Christian@bowmanandbrooke.com
Jonathan.Smith@bowmanandbrooke.com

and

Michael X. Imbroscio
(*admitted pro hac vice*)
Kevin M. Kelly
(*admitted pro hac vice*)
Garrett E. Cunningham
(*admitted pro hac vice*)
Lauren T. Smith
(*admitted pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
mimbroscio@cov.com
kkelly@cov.com
gcunningham@cov.com
lsmith@cov.com

Kurt Calia
(*admitted pro hac vice*)
COVINGTON & BURLING LLP
3000 El Camino Real, 5 Palo Alto
Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4700
kcalia@cov.com

***Attorneys for Plaintiff***
***NOVO NORDISK INC.***

**CERTIFICATE OF CONFERENCE**

I certify that on May 4–5, 2026, counsel for Novo Nordisk conferred via email and telephone with Defendant's counsel, who confirmed that Defendant opposes this motion.

*/s/ Jonathan L. Smith*

**CERTIFICATE OF WORD COUNT**

I hereby certify that the body text of this document contains 2,268 words.

*/s/ Jonathan L. Smith*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 10, 2026, I caused the foregoing document to be filed with the Clerk of the Court of the United States District Court for the Northern District of Texas using the Court's CM/ECF system.

*/s/ Jonathan L. Smith*