**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

NOVO NORDISK INC.,

Plaintiff,

v.

LINK PHARMACY LLC,

Defendant.

Civil Action No. 3:25-CV-02061-E

**PLAINTIFF NOVO NORDISK INC.'S OPPOSITION**
**TO DEFENDANT'S MOTION TO REINSTATE STAY OF DISCOVERY**

Defendant Link Pharmacy LLC ("Link") has renewed its request to halt these proceedings—this time in a motion to "reinstate" a stay that was lifted when Novo Nordisk filed its First Amended Complaint. Link's Motion to Reinstate Stay (ECF No. 91) ("Mot."). Many of Link's arguments for a stay have been rejected by this Court in other cases. Link also claims for the first time that its purported asset sale to a related entity is also a basis to stay discovery. But Link never even mentioned this issue in its original motion to dismiss or motion to stay discovery, even though the underlying facts existed at that time. Far from justifying a stay, Link's reliance on key facts about its corporate structure that it could have raised from the outset but chose not to shows why continuing discovery is *essential*: Novo Nordisk is entitled to discovery regarding the shell game that Link appears to be playing to shield itself from liability for ongoing unlawful conduct, as well as other documents and information regarding Link's operations.

Although Novo Nordisk filed this lawsuit on August 4, 2025, discovery remains in its early stages while Link creates procedural obstacles and resists discovery. In light of this history, and because Link cannot meet its burden to show why this case warrants the "extraordinary step" of halting discovery, the Court should deny the Motion.

## NATURE AND STAGE OF THE PROCEEDINGS

Novo Nordisk filed this lawsuit over one year ago, on August 4, 2025, asserting unfair competition claims under the laws of several states based on Link's unlawful manufacturing and selling of unapproved and untailored compounded "semaglutide" drugs. After securing a lengthy extension, Link filed its first Motion to Dismiss on October 29, 2025 (ECF No. 13), which was fully briefed on December 19, 2025. On January 13, 2026, the Court entered its initial Scheduling Order. (ECF No. 29.) A month after dismissal motion briefing was completed, Link filed its first motion to stay discovery on January 20, 2026. (ECF No. 30.) On July 27, 2026, one week before Judge Brown recused herself from the case (ECF No. 81), the Court granted Link's motion to stay discovery filed six months earlier. (ECF No. 77.)

On August 4, 2026, Novo Nordisk filed its First Amended Complaint. (ECF No. 84.) On August 24, 2026, Link filed its Motion to Dismiss the First Amended Complaint (ECF No. 89), repeating several of its earlier arguments and asserting—for the first time—that this Court lacks subject matter jurisdiction because Link Pharmacy LLC "no longer operates" the pharmacy business at issue because it was allegedly sold on June 18, 2025 to a related entity, LT Pharmacy Buyer LLC. *Id.* at 2-3, 10-11. The following day Link filed the instant motion seeking to "reinstate" the discovery stay (ECF No. 91). The Court's Amended Scheduling Order now sets trial for October 18, 2027 and discovery closes in less than a year, on July 20, 2027. (ECF No. 88.)

## STATEMENT OF THE ISSUES AND LEGAL STANDARD

To prevail, Link must show that this is an exceptional case that warrants a discovery stay while its motion to dismiss is pending (particularly in view of the Court's Amended Scheduling Order, which states that "<u>[t]he pendency of a Rule 12 motion to dismiss does not stay the case unless the Court explicitly so orders</u>." *Id.* (emphasis in original). Link cannot meet that burden. Indeed, the fact that Link now raises an entirely new corporate-structure argument—which was available to it from the

outset but which it never raised in its first motion to dismiss—demonstrates that discovery is needed to understand the true nature of Link's corporate relationships and operations.

A stay of discovery is an "extraordinary step." *X Corp. v. Media Matters for Am.*, No. 4:23-CV-01175-O, 2024 WL 1895255, at *1 (N.D. Tex. Apr. 26, 2024) (quoting *Valenzuela v. Crest-Mex Corp.*, No. 3:16-CV-1129-D, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017)). For that reason, motions to stay discovery pending resolution of a motion to dismiss are "the exception rather than the rule." *Mahalingam v. Wells Fargo Bank, N.A.*, 349 F.R.D. 127, 141 (N.D. Tex. 2023). "If the Federal Rules of Civil Procedure contemplated that pending motions to dismiss would stay discovery, they would contain a provision to that effect." *X Corp.*, 2024 WL 1895255, at *1. "Because no such provision exists, courts should only exercise 'discretion to stay discovery for good cause shown.'" *Id.* (quoting *Von Drake v. Nat'l Broad. Co.*, No. 3-04-CV-0652R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004)) (internal quotations omitted). "Courts in the Fifth Circuit routinely decline to stay discovery pending the resolution of another motion because this alone falls short of demonstrating good cause." *Id.* Courts evaluate whether good cause has been shown using the following three factors: "(1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Id.* (quoting *Von Drake*, 2004 WL 1144142, at *1). Link has not met any of these factors, much less all of them.

## ARGUMENT

### I. Novo Nordisk's Discovery Requests Are Tailored to the Claims and Defenses at Issue, Including Link's New Corporate-Structure Argument.

To halt discovery pending the resolution of a motion to dismiss, Link must "explain how specific discovery requests are overbroad to the point of warranting a stay of all discovery." *X Corp.*, 2024 WL 1895255, at *5. Link complains about the supposed breadth of Novo Nordisk's discovery yet ignores that the requests are directly relevant to claims Link admits remain unaffected by its corporate asset sale. There is no dispute that Link operated a pharmacy and sold compounded

semaglutide products prior to June 2025, when Link purportedly sold its assets to an affiliated company. Novo Nordisk is entitled to discover whether Link's claimed sale is a genuine corporate separation or a device to evade liability while continuing the same unlawful conduct through a related entity. Indeed, even if Link transferred all of its assets to an affiliated company in June 2025 (and the evidentiary record is far from clear that it did), Novo Nordisk can properly maintain claims against Link because the affiliated entity that allegedly purchased its assets still does business in the District as Link Pharmacy (as Link admits, ECF No. 89 at 2, 10), and otherwise on proper application of principles of successor liability and the voluntary cessation doctrine, as well as Rule 65(d)(2).

In any event, Novo Nordisk's key discovery requests are narrowly tailored to its claims against Link and to the corporate relationships that Link itself has placed at issue. Rather than seeking "broad" discovery, as Link inaccurately claims, Mot. at 11, Novo Nordisk has served targeted requests specifically related to its claims that Link unfairly competed with Novo Nordisk by selling unapproved and untailored drugs.[1]

Link claims that Novo Nordisk's discovery into the corporate structure of Link, LT Pharmacy Buyer LLC, OpenLoop Health, Inc., and related entities is overbroad. Mot. at 6-7. But Link cannot simultaneously claim that its asset sale immunizes it from liability while objecting to discovery aimed at understanding that very transaction. Notably, Novo Nordisk served Rule 45 subpoenas on OpenLoop, LT Pharmacy Holdco 1, and LT Pharmacy Holdco 2 (all companies affiliated to Link and the company, LT Pharma Buyer Co., that Link claims now owns its assets) seeking documents on corporate structure, ownership, operations, and financials. Ex. A. The June 15, 2026 response deadline for those subpoenas preceded the prior stay order. (ECF No. 77.) Yet *all* of these entities,

[1] Moreover, the appropriate mechanism to address concerns of alleged "overbreadth" is not via a stay of proceedings but rather through appropriate discovery motions practice. Link has never sought to limit the requested discovery through a Rule 26(c) protective order motion, for example.

each represented by Link's counsel, refused to produce a single document and instead served boilerplate objections. Ex. B. If Link wishes to hide behind complex corporate ownership structures, Novo Nordisk is entitled to discover whether those transfers are legitimate or whether they are part of a scheme to continue unlawful conduct while evading accountability. *See Mayo Marrs Casing Pulling, Inc. v. P&K Equip., Inc.*, No. 2:20-CV-057-Z-BR, 2020 WL 4464318, at *3–4 (N.D. Tex. Aug. 4, 2020) (granting jurisdictional discovery where plaintiff alleged "shell game" with corporate structure).

## II. Link Has Not Demonstrated Undue Burden, Particularly Given That It Has Placed Its Own Corporate Structure at Issue.

As the party with the burden to show good cause in resisting discovery, Link "bears the responsibility of actually establishing the undue burden." *X Corp.*, 2024 WL 1895255, at *5 (citing *Sneed v. Abbot*, No. CV 21-279-JWD-RLB, 2021 WL 2877239, at *5 (M.D. La. June 29, 2021)). "Conclusory and halfhearted assertions of undue burden—or reliance on the other factors—fall short of demonstrating good cause." *X Corp.*, 2024 WL 1895255, at *5.

Link's complaints about burden primarily[2] relate to Novo Nordisk's discovery into the corporate relationships between Link, LT Pharmacy Buyer LLC, OpenLoop Health, Inc., and related entities. Mot. at 5-7. But discovery into these relationships is directly relevant to Novo Nordisk's claims and to Link's own defenses. Link cannot have it both ways: it cannot invoke complex corporate transactions and ownership structures as a shield against liability while simultaneously objecting to

---

[2] Link also takes issue with Novo Nordisk's Requests for Admission that seek information related to Link's distribution of its unapproved GLP-1 products in each state and the District of Columbia. These requests are likewise narrowly tailored to the claims and defenses at issue and in any event do not create the burden that Link implies. For example, the Requests for Admission merely ask Link to confirm whether it delivers, sells, or otherwise gives away its products in each of the U.S. states and territories. *See* Mot., at Ex. A. These requests clearly relate to Novo Nordisk's claim that Link violates various state laws by "marketing and selling untailored new drugs throughout the United States" (ECF No. 84 ¶ 14.) and require a simple yes or no response. Surely where Link markets and sells its products is information that Link has readily at hand, and it could likely answer these requests in a matter of minutes.

discovery aimed at understanding those transactions and structures. If Link's claimed corporate separation is legitimate and not just a shell game designed to evade liability, those facts will come out in discovery. Either way, Link brought any alleged burden of discovery related to its corporate structure upon itself by relying on that structure as a basis for dismissal. Hence, Novo Nordisk is entitled, at a minimum, to discovery about Link's corporate structures and the transactions that created them. *See McAllister v. FDIC*, 87 F.3d 762, 766 (5th Cir. 1996) ("When a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an opportunity for discovery and a hearing that is appropriate to the nature of the motion to dismiss." (citation omitted)).

In addition, Link has not provided any factual support for its burden arguments, such as a declaration estimating the person hours required for response, the volume of documents or information requested, or the number of personnel that would have time diverted to responding. Instead, all Link can offer are "conclusory and halfhearted assertions," which are wholly insufficient to establish an undue burden. *See X Corp.*, 2024 WL 1895255, at *5.

## III. Novo Nordisk's Claims Are Likely to Survive Link's Motion to Dismiss, and Link's New Theory Confirms Why Discovery Is Essential.

Finally, to justify a stay of discovery pending the resolution of a motion to dismiss, Link must show that its arguments in support of its motion to dismiss are "so substantial to justify a stay." *X Corp.*, 2024 WL 1895255, at *2 (quoting *Von Drake*, 2004 WL 1144142, at *2) (quotations omitted). "This standard is a demanding one because a stay is an intrusion into the ordinary processes of administration and judicial review." *Id.* (quoting *Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*, No. 2:19-cv-00259, 2020 WL 1433960, at *3 (E.D. Tex. Mar. 24, 2020)) (cleaned up).

Novo Nordisk will respond in full to Link's dismissal motion by the due date of September 21. But for the purposes of determining whether a discovery stay should be granted, it is clear that Link's arguments are not sufficiently substantial to warrant a stay for several reasons. First, in a case

involving substantially similar facts and allegations, the Fifth Circuit has already rejected Link's argument that state unfair competition laws are preempted by federal law. *Zyla Life Scis., L.L.C. v. Wells Pharma of Houston, L.L.C.*, 134 F.4th 326, 330–31 (5th Cir. 2025). Second, Novo Nordisk has Article III standing. As the only company with FDA approval to sell semaglutide medicines, Novo Nordisk has alleged that it has been harmed by Link's unlawful conduct—including millions in compounded semaglutide sales—which is sufficient for standing.[3] These injuries are independently established by Link's conduct before June 18, 2025, when Link was indisputably operating the pharmacy. Third, Novo Nordisk adequately satisfies the requisite pleading standards, and the First Amended Complaint sufficiently states a claim for relief and alleges facts—including "the who, what, when, where, and how" of the conduct at the heart of Novo Nordisk's unfair competition claims (*see Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); FAC ¶¶ 52–56, 63–67, 80, 108, 128, 139, 149, 161, 170)—that must be taken as true on a motion to dismiss.

Link's pending motion also raises a new argument based on an alleged asset sale to LT Pharmacy Buyer LLC that purportedly occurred on June 18, 2025—weeks *before* Novo Nordisk filed this lawsuit. Yet Link never raised this argument in its first motion to dismiss. The fact that Link is only now invoking this corporate restructuring—even though the underlying facts were the same when Novo Nordisk filed its first complaint—suggests that this is a litigation tactic designed to delay discovery rather than a meritorious defense. Nowhere does Link explain how an argument of

---

[3] Courts in Novo Nordisk's parallel semaglutide litigation have repeatedly held that Novo Nordisk's allegations of injury are sufficient to establish Article III standing. *See Novo Nordisk A/S v. Liferxmd*, No. 24-9018, 2026 WL 222214, at *3 (D.N.J. Jan. 28, 2026) ("Allegations of consumer confusion, loss of goodwill, and reputational harm are sufficient to plead an injury in fact and confer standing under Article III."); *Novo Nordisk A/S v. Ikon Health LLC*, No. 4:24-CV-05093-RLP, 2026 WL 196475, at *3 (E.D. Wash. Jan. 26, 2026) ("Here, Novo Nordisk has established a sufficient injury for Article III standing[.]"); *Novo Nordisk A/S v. Aios Inc. d/b/a Fella Health*, No. 4:25-cv-06560, Dkt. 56, at 3–4 (N.D. Cal. Mar. 10, 2026) (lost market share, lost sales, and goodwill damage sufficient); *Novo Nordisk A/S v. Mai Kaga, MD LLC*, No. 25-267, 2025 WL 3707550, at *3 (D.N.J. Dec. 22, 2025) (same).

sufficient gravity to warrant dismissal (or a stay) was conspicuously absent from its original dismissal motion. Regardless, as Novo Nordisk will explain in its forthcoming Opposition, Link's Motion to Dismiss is meritless, and Link's belated reliance on a corporate restructuring it could have raised at the outset only confirms that discovery is needed to understand the true nature of Link's operations.

In any event, "a stay should not be granted simply because a party believes it will prevail on its dispositive motion." *X Corp.*, 2024 WL 1895255, at *2 (citing *Griffin v. Am. Zurich Ins. Co.*, No. 3:14-CV-2470-P, 2015 WL 11019132, at *2 (N.D. Tex. Mar. 18, 2015)). Even jurisdictional questions are not, of themselves, a sufficient basis to stay discovery. *See X Corp.*, 2024 WL 1895255, at *2. And Link's Article III standing argument is far from the slam dunk Link suggests. Courts routinely permit discovery to proceed even where jurisdictional questions are pending. *See X Corp.*, 2024 WL 1895255, at *2. Link's argument that injuries arising after the alleged asset sale are not "traceable" to Link ignores the possibility that Link may be liable for injuries caused by conduct it set in motion, or that the corporate separation Link touts may not be as clean as it claims. Indeed, the very complexity of the corporate structure Link has erected—involving Link Pharmacy LLC, LT Pharmacy Buyer LLC, OpenLoop Health, Inc., and multiple intermediate holding companies—raises serious questions about whether this is a legitimate business reorganization or a scheme to continue unlawful operations while insulating the original wrongdoer from liability. Discovery is essential to answer these questions.

**IV. Novo Nordisk Is Prejudiced by Link's Strategy of Delay.**

Link's Motion to Dismiss highlights the prejudice that Novo Nordisk would continue to suffer by a stay of discovery. The information Novo Nordisk seeks in its discovery requests bears directly on Link's newly-raised corporate-structure argument. Link now claims that it sold its pharmacy assets to LT Pharmacy Buyer LLC and therefore cannot be held liable for post-sale conduct. Novo Nordisk is entitled to discovery about the true nature of that sale, including (1) the ownership interests in Link and related entities; (2) the circumstances of the alleged asset transfer; (3) the relationships between

Link, LT Pharmacy Buyer LLC, OpenLoop Health, Inc., and the LT Pharmacy holding companies; and (4) the financial arrangements among all those entities. *See* Mot., Exs. A-C. Staying discovery would deny Novo Nordisk and this Court the ability to assess the accuracy of Link's claim that its corporate structure immunizes it from liability while allowing Link to continue to benefit from its own strategic decision to raise this argument for the first time more than a year into the litigation.

Moreover, while Link argues that courts routinely find no prejudice from a temporary stay in the early stages of a case, Link overlooks the fact that this lawsuit was filed over a year ago and that it has barely progressed during that time frame, in no small part due to Link's obstructionism. For example, Link failed to timely serve its Initial Disclosures, providing them nearly two months after the court-ordered deadline, on March 16, 2026. Link also ignored the Court-ordered deadline for email discovery disclosures; the Court (ECF No. 29 at 5) set a deadline of 21-days from Initial Disclosures, or February 11, 2026, but Link did not serve its disclosures until April 6, 2026. Consistently, Link's Responses and Objections to Novo Nordisk's First Set of Interrogatories were largely devoid of substantive information, consisting primarily of boilerplate objections and evasive non-answers—deficiencies so significant that Novo Nordisk was preparing to move to compel adequate responses prior to the Court's July 27 stay order. Most troubling, the third parties to whom Novo Nordisk directed discovery—entities that Link itself identified as relevant to its corporate-structure defense—have produced zero documents to date. Link's dilatory conduct is a significant factor for why this case remains in its infancy more than thirteen months after it was filed, and Link should not now be permitted to benefit from the delay it has caused.

## **CONCLUSION**

Link has not met its burden to show that this case is one of the exceptions in which a stay pending the resolution of a dismissal motion is warranted. After more than a year of litigation, Novo Nordisk has received virtually no discovery from Link, and it has received no discovery at all from

Link's affiliates. Link's newly invented corporate-form defense—based on facts that existed from the inception of this case but were never raised before—only underscores the need for discovery. Novo Nordisk respectfully requests that the Court deny Link's Motion to Reinstate the Stay of Discovery and allow discovery to continue without further delay.

Dated: September 15, 2026

Respectfully submitted,

*/s/Jonathan L. Smith*
Jonathan L. Smith
Texas Bar No. 24088436
Randall L. Christian
Texas Bar No. 00783826
BOWMAN AND BROOKE LLP
2901 Via Fortuna Drive, Suite 500
Austin, TX 78746
Tel.: (512) 874-3800
Fax: (512) 874-3801
Jonathan.Smith@bowmanandbrooke.com
Randall.Christian@bowmanandbrooke.com

Trevor Carolan
Texas Bar No. 24128898
BOWMAN AND BROOKE LLP
5850 Granite Parkway, Suite 900
Plano, Texas 75024
Telephone: (972) 616-1700
Fax: (972) 616-1701
trevor.carolan@bowmanandbrooke.com

and

Michael X. Imbroscio
(*admitted pro hac vice*)
Kevin M. Kelly
(*pro hac vice application forthcoming*)
Lauren T. Smith
(*admitted pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
mimbroscio@cov.com

afrodle@cov.com
gcunningham@cov.com
lsmith@cov.com

Kurt Calia
(*admitted pro hac vice*)
COVINGTON & BURLING LLP
3000 El Camino Real, 5 Palo Alto
Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4700
kcalia@cov.com

***Attorneys for Plaintiff NOVO NORDISK INC.***

**CERTIFICATE OF WORD COUNT**

I hereby certify that the body text of this document contains 3,306 words.

*/s/Jonathan L. Smith*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 15, 2026, I caused the foregoing document to be filed with the Clerk of the Court of the United States District Court for the Northern District of Texas using the Court's CM/ECF system.

*/s/Jonathan L. Smith*