**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| NOVO NORDISK INC.,<br>Plaintiff,<br>vs.<br>LINK PHARMACY LLC,<br>Defendant. | Civil Action No. 3:25-cv-2061 |

**DEFENDANT LINK PHARMACY LLC'S REPLY IN SUPPORT OF ITS MOTION TO REINSTATE STAY OF DISCOVERY**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. Link's Motion to Dismiss Raises Substantial Threshold Issues That Discovery Cannot Cure. ..... 2
B. Novo's Own Discovery Confirms that the Breadth and Burden Factors Strongly Favor a Stay. ..... 4
C. Novo's Cited Authorities Actually Support Link's Stay Request. ..... 6
D. Novo's "Shell Game" Narrative Does Not Justify Its Sweeping Discovery. ..... 7
E. Novo Will Not Be Prejudiced by a Temporary Stay. ..... 9
III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 9

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 3

*Conquest v. Camber Corp.*,
No. 13-1108, 2014 WL 172500 (W.D. Tex. 2014) .......... 9

*Mahalingam v. Wells Fargo Bank, N.A.*,
349 F.R.D. 127 (N.D. Tex. 2023) .......... 6, 7

*Mayo Marrs Casing Pulling, Inc. v. P&K Equipment, Inc.*,
No. 20-057, 2020 WL 4464318 (N.D. Tex. Aug. 4, 2020) .......... 8

*McAllister v. FDIC*,
87 F.3d 762 (5th Cir. 1996) .......... 8

*Petrus v. Bowen*,
833 F.2d 581 (5th Cir. 1987) .......... 3

*Samsung Elecs. Am., Inc. v. Chung*,
321 F.R.D. 250 (N.D. Tex. 2017) .......... 5

*Sneed v. Abbott*,
No. 21-279, 2021 WL 2877239 (M.D. La. June 29, 2021) .......... 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 3

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3

*Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*,
561 F.3d 377 (5th Cir. 2009) .......... 5

*Valenzuela v. Crest-Mex Corp.*,
No. 16-1129, 2017 WL 2778104 (N.D. Tex. June 26, 2017) .......... 6

*Von Drake v. Nat'l Broad. Co.*,
No. 04-0652, 2004 WL 1144142 (N.D. Tex. May 20, 2004) .......... 1, 2, 3, 6, 7

*X Corp. v. Media Matters for Am.*,
No. 23-01175, 2024 WL 1895255 (N.D. Tex. Apr. 26, 2024) ........ 6

*Zyla Life Sciences, L.L.C. v. Wells Pharma of Houston, L.L.C.*,
134 F.4th 326 (5th Cir. 2025) ........ 4

## I. <u>INTRODUCTION</u>

Novo Nordisk Inc.'s ("Novo") Opposition relies on rhetoric over substance. Link Pharmacy LLC ("Link") seeks reinstatement of the discovery stay because every *Von Drake* factor favors resolving the pending Motion to Dismiss ("Motion") before the parties and multiple non-parties incur the burden and expense of discovery. Although Judge Brown's prior stay dissolved when Novo filed its First Amended Complaint ("FAC"), all of the same considerations warranting the original stay remain today. Link's Motion challenges Novo's standing, the availability of the relief it seeks, and the legal sufficiency of each of its ten causes of action. If granted in whole or in part, the Motion will eliminate or substantially narrow the claims, remedies, time periods, entities, and issues properly subject to discovery.

Novo largely sidesteps that analysis. Rather than address the threshold issues raised by Link's stay motion, the scope of Novo's discovery, or the absence of prejudice from a temporary stay, Novo devotes much of its Opposition to attacking Link's pre-suit asset sale, characterizing it as a "purported" transaction and a "shell game." But Novo's disagreement with the legal consequences of that transaction does not answer the stay question before the Court. Discovery cannot cure pleading deficiencies, create standing, or alter governing law. The relevant inquiry is whether Novo has standing, stated viable claims, and seeks is legally available relief.

In focusing on the asset sale, Novo attempts to obscure the factor that most strongly favors a stay: the extraordinary scope of Novo's own discovery requests, which extend beyond the case Novo pleaded. Novo characterizes its requests as "narrowly tailored," but it served 176 Requests for Admission, issued broad subpoenas to three non-parties, and demanded nationwide every-state discovery (despite suing under nine specific state laws) via 60 Requests for Production and 5 Interrogatories. Those requests seek information dating back to 2021 concerning operations,

corporate governance, finances, telehealth relationships, tax returns, and entities accused of no wrongdoing in the First Amended Complaint ("FAC").

Novo further escalated that overreach on the day after filing its opposition to Link's stay motion, serving Link with a wildly overbroad Rule 30(b)(6) deposition notice ("Notice"). The Notice identifies 19 topics, defines "Link" to include five separate entities, and seeks testimony concerning Link's nationwide distribution, post-sale operations, affiliate finances, inspections, licensing, legislation, marketing, and restructuring. Novo's discovery requests reach far beyond the case that Novo's FAC tried to plead.

Link does not seek a stay merely because its motion to dismiss is pending. Link seeks an orderly sequence for this case: the Court should first determine whether any of Novo's claims, remedies, entities, and time periods were properly placed in issue by Novo's FAC, and then permit discovery tailored to that case. Novo offers no persuasive reason to proceed in reverse.

## II. <u>ARGUMENT</u>

Novo's Opposition largely attempts to shift the focus away from the *Von Drake* analysis by editorializing Link's pre-suit asset sale. ECF no. 96. But the stay inquiry turns on the good cause factors, and those factors strongly favor temporarily pausing discovery until the Court resolves the Motion to Dismiss. Indeed, the breadth of discovery Novo seeks in the name of that narrative underscores why the Court should first determine the scope of the case before requiring the parties and multiple non-parties to litigate the scope of discovery. While Judge Brown's prior stay order does not control, it confirms that the existence of significant threshold issues warrant a discovery pause while the Court resolves Link's Motion. ECF no. 77.

### A. <u>Link's Motion to Dismiss Raises Substantial Threshold Issues That Discovery Cannot Cure.</u>

Novo contends that Link's Motion to Dismiss is too weak to support a stay. ECF No. 96 at

6–8. But Novo mis-frames the inquiry. The relevant question is not whether Link has already established that its Motion will prevail, but whether the Motion presents substantial threshold issues that could dispose of or materially narrow this action's scope, making discovery premature. *Von Drake v. Nat'l Broad. Co.*, No. 04-0652, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004).

Link's Motion does. It challenges each of Novo's ten causes of action under Rules 8, 9(b), 12(b)(1), and 12(b)(6). ECF no. 89. Among other grounds, it argues that the FAC fails to plead facts showing that any compounded drug violated Section 503A or an applicable state compounding requirement; impermissibly seeks private enforcement of Section 503A; asserts an unfair competition theory Texas law does not recognize; seeks prospective relief under Georgia law against an entity that no longer operates the pharmacy; and fails to plead its deception-based claims with the particularity Rule 9(b) requires. *Id*. The Motion also challenges Novo's entitlement to disgorgement and other remedies. *Id*. at 24-25. These are fundamental legal and pleading issues. Discovery cannot change the governing law or supply allegations missing from the FAC. *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("nothing could be learned through discovery" that would affect resolution of the defendants' Rule 12(b)(6) motion).

The Motion also presents an Article III issue that Novo's parallel semaglutide cases did not address: whether alleged post-sale injuries are traceable to and redressable against Link, which sold its pharmacy assets before Novo filed suit and no longer operates the pharmacy. ECF no. 89 at 9-14. Standing must exist for each claim and each form of relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Prospective injunctive relief must redress a defendant's ongoing or likely-to-recur conduct, and disgorgement cannot reach proceeds the defendant did not receive. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). Whether Novo may obtain relief from Link for conduct allegedly

undertaken by a non-party after the sale is a threshold legal issue that will define, if not eliminate, discovery concerning current operations, post-sale revenues, and non-party relationships.

Novo's reliance on *Zyla Life Sciences, L.L.C. v. Wells Pharma of Houston, L.L.C.*, 134 F.4th 326 (5th Cir. 2025), does not render Link's Motion insubstantial. ECF no. 96 at 7. *Zyla* involved different claims than those pled here; the parties in *Zyla* did not brief some of Link's arguments; and *Zyla* does not resolve Link's standing, pleading, state law, and remedy-specific challenges. Whether *Zyla* controls any particular theory is itself a legal question for the Court, not a reason to permit overbroad discovery before that question is decided. Either way, Link's Motion will shape the proper scope of discovery, which makes the breadth and burden of Novo's current discovery requests particularly relevant.

**B. <u>Novo's Own Discovery Confirms that the Breadth and Burden Factors Strongly Favor a Stay.</u>**

Novo's Opposition attempts to turn the breadth inquiry into a debate over Link's asset sale. But the relevant evidence is Novo's discovery itself, which is expansive by any measure and extends well beyond the claims in the FAC and the sole party sued. ECF Nos. 91-1, 91-2, 91-3.

Novo's FAC pleads claims under the laws of nine states against a single defendant. ECF no. 89. Yet its discovery seeks documents regarding nationwide sales, prescriptions, compounding records, patient complaints, supplier information, inspections, licensing materials, tax returns, and communications with customers, trade associations, lobbying organizations, and industry groups. ECF Nos. 91-1, 91-2. Novo also subpoenaed OpenLoop Health, Inc., LT Pharmacy Holdco 1 LLC, and LT Pharmacy Holdco 2 LLC, seeking corporate governance, ownership, commercial contracts, telehealth relationships, prescription volumes, financial arrangements, communications involving other pharmacies, and federal and state tax returns dating to January 1, 2021. ECF no. 91-3. None of those entities are defendants.

Novo's 30(b)(6) Notice removes any doubt about Novo's intent to press for expansive and sweeping discovery. Although Link is the sole defendant, Novo tries to define "You," "Your," "Link Pharmacy," and "Defendant" to include Link, OpenLoop, LT Pharmacy Holdco 1, LT Pharmacy Holdco 2, and LT Pharmacy Buyer. *See* Novo's 30(b)(6) Notice to Link, Exhibit A at Definition ¶ 11. Using that collective definition, Novo demands testimony from Link through the present concerning 19 topics, including nationwide distribution, corporate structure and finances, telehealth relationships, marketing, formulations, adverse events, recalls, lobbying, legislation, FDA and state-board inspections, licensing, accreditation, and restructuring. *Id.*, Topics 1–19. The Notice even "reserves" Novo's "right" to add or modify topics as discovery proceeds. *Id.* at 2.

The Notice disproves Novo's claim that it seeks only targeted discovery concerning the asset sale. ECF no. 96 at 4. Rather than isolate a discrete factual question bearing on jurisdiction, Novo defines multiple separate entities as "Link," and then seeks broad merits discovery about all of them. Exs. A-C. Novo is effectively using Link as a vehicle for discovery on entities it chose not to sue and for claims it did not plead.[1] But "[t]he role of discovery … is to find support for properly pleaded claims, not to find the claims themselves." *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009). Parties have "no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). The discovery Novo seeks sweeps in additional entities, years of operational activity, and conduct occurring after the

[1] OpenLoop Health, Inc., LT Pharmacy Buyer LLC, and the intermediate holding companies are Delaware entities, as is Novo. Link disclosed those relationships through its Rule 7.1 disclosure and verified interrogatory responses. Yet, Novo elected not to add those entities as defendants, as doing so would divest this court of federal diversity-based subject matter jurisdiction, and Novo asserts no claims that would merit the exercise of federal question jurisdiction.

June 2025 transaction, going well beyond the claims Novo's FAC tried to plead. ECF Nos. 91-1, 91-2, 91-3.

The discovery burden on Link, the non-parties, and the Court is not hypothetical. Novo demands that parties and non-parties alike collect documents and prepare witnesses to testify across years of operations, multiple entities, nationwide activity, sensitive financial and commercial information, and regulatory matters that may fall outside any surviving claim once the Court rules on Link's Motion. The overbreadth of Novo's discovery is obvious on its face; this Court does not need a declaration from Link explaining how many person-hours would be required to respond to 176 nationwide RFAs, 60 RFPs, 5 Interrogatories, non-party subpoenas, and a 19-topic 30(b)(6) notice. ECF Nos. 91-1, 91-2, 91-3; Ex. A. The burden is avoidable, as a ruling on the Motion will determine whether significant categories of discovery belong in the case at all.

### C. <u>Novo's Cited Authorities Actually Support Link's Stay Request.</u>

Novo's cited authorities do not compel a different result. Novo relies on *X Corp.* and *Valenzuela* for the unremarkable proposition that a pending motion to dismiss does not automatically stay discovery. *X Corp. v. Media Matters for Am.*, No. 23-01175, 2024 WL 1895255, at 1 (N.D. Tex. Apr. 26, 2024) (quoting *Von Drake v. Nat'l Broad. Co.*, No. 04-0652, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004)); *Valenzuela v. Crest-Mex Corp.*, No. 16-1129, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017). Link does not contend otherwise. But both *X Corp.* and *Von Drake* recognize that the stay analysis turns on the breadth of discovery sought, the burden of responding, and the strength of the pending Motion. *X Corp.*, 2024 WL 1895255, at *1; *Von Drake*, 2004 WL 1144142, at *1. Those factors all strongly favor a stay here. Novo seeks nationwide discovery, discovery from non-parties it elected not to sue, and discovery concerning post-sale conduct and entities beyond the FAC. The burden extends well beyond the sole defendant, and the Motion raises threshold issues that may eliminate entire categories of discovery.

None of Novo's cited authorities involved comparable circumstances.

Nor does *Mahalingam* assist Novo. There, the movant sought to avoid participating in otherwise proper discovery based on the pendency of a motion to dismiss. *Mahalingam v. Wells Fargo Bank, N.A.*, 349 F.R.D. 127, 141-42 (N.D. Tex. 2023). Link does not seek a categorical stay of discovery whenever a dispositive motion is filed. The circumstances here are unique. Link seeks a temporary stay because the Court's ruling on the Motion will determine whether large categories of Novo's requested discovery are relevant in the first place.

Novo's reliance on *Sneed* is similarly misplaced. *Sneed v. Abbott*, No. 21-279, 2021 WL 2877239, at *4-5 (M.D. La. June 29, 2021). The court in *Sneed* emphasized that the stay analysis turns on the particular circumstances of the case, including the burden of discovery and whether a stay would promote efficiency. Link does not seek a stay because discovery is burdensome in the abstract. Rather, Link seeks a temporary stay because the proper scope of Novo's discovery depends on threshold issues presently before the Court. Those considerations strongly favor a reinstatement of a temporary discovery stay and would promote efficiency—a concern that *Sneed* recognized as central to the good cause analysis.

### D. <u>Novo's "Shell Game" Narrative Does Not Justify Its Sweeping Discovery.</u>

Unable to minimize the actual scope of its affirmative discovery, Novo attempts to justify it by accusing Link of playing a "shell game." The accusation is unsupported and, in any event, does not answer the *Von Drake* factors. Link's asset sale occurred on June 18, 2025, before Novo filed this action. Link identified LT Pharmacy Buyer LLC and related entities in its October 2025 Rule 7.1 disclosure, described the transaction and corporate relationships in verified interrogatory responses, and produced the operative transaction documents. ECF No. 15; ECF No. 67-2. Novo acknowledged those disclosures and even stated that it intended to add OpenLoop as a defendant before electing not to do so. ECF No. 67-6. Indeed, Novo's current discovery confirms its

awareness of these entities, as it seeks discovery concerning OpenLoop, LT Buyer, and related entities while choosing not to sue them. ECF No. 91-2 at 6 (Interrogatory No. 14); ECF No. 91-2 at 12 (RFP No. 58); ECF No. 91-3. Moreover, Novo identifies no concealed transfer, unidentified entity, or missing transaction document necessary to understand what occurred. Novo apparently disagrees with the legal consequences of the disclosed transaction and argues that Link can somehow be liable for post-sale conduct of another entity. That position presents a legal question for the Court, not a basis for unrestricted fact discovery.

For the same reason, Novo's jurisdictional discovery cases do not apply. *Mayo Marrs* involved identified, unresolved jurisdictional facts concerning affiliated entities and authorized discovery directed to those disputes. *Mayo Marrs Casing Pulling, Inc. v. P&K Equipment, Inc.*, No. 20-057, 2020 WL 4464318, at *3–4 (N.D. Tex. Aug. 4, 2020). *McAllister* likewise involved a specific missing item of evidence that was decisive of a jurisdictional issue. *McAllister v. FDIC*, 87 F.3d 762, 765–67 (5th Cir. 1996).

In contrast, Novo identifies no comparable factual gap here. Link's assets were sold on June 18, 2025. The relevant entities are known. Their corporate relationships have been disclosed. Their Delaware citizenship has been disclosed. And Novo has long known that LT Pharmacy Buyer LLC, not Link, currently operates the pharmacy. Because the operative facts are known, discovery will not resolve the dispute Novo identifies; only a legal ruling will. *Mayo Marrs,* 2020 WL 4464318, at *3-4; *McAllister*, 87 F.3d at 765-67. And Novo seeks far more than discovery directed to any discrete jurisdictional issue. Novo seeks information dating to January 1, 2021 concerning non-party ownership, governance, telehealth contracts, financial arrangements, tax returns, inspections, licensing, marketing, recalls, lobbying, and current operations. That is far from "targeted jurisdictional discovery." It is broad merits discovery whose relevance depends on

whether Novo may pursue claims concerning post-sale conduct, non-party entities, and the remedies challenged in Link's Motion to Dismiss.

Novo's insistence that fact discovery might support successor-liability, voluntary-cessation, alter-ego, or Rule 65 theories does not change the analysis. If Novo believes the transaction was fraudulent (despite the verified information Link has already produced) or that separate corporate entities should be disregarded, the FAC must plead some viable basis for doing so, and establish federal subject-matter jurisdiction. Discovery is not a vehicle to search for claims that have not been adequately pleaded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

Nor is Link required to litigate these issues request—by—request through Rule 26(c) motion practice before the Court determines the scope of the case itself. A protective order may narrow discovery within a defined lawsuit. But here, Link's Motion to Dismiss will help determine whether post-sale conduct, non-party operations, nationwide activity, and certain remedies remain relevant at all. Requiring individualized discovery disputes now would force the Court to decide the scope of discovery before deciding the scope of the claims. A temporary stay avoids that inefficient sequence.

**E. <u>Novo Will Not Be Prejudiced by a Temporary Stay.</u>**

Novo claims prejudice because the case has been pending for over a year. But the relevant question is whether a temporary stay would prejudice Novo's ability to prosecute its claims—not whether the litigation has taken time. Trial is set for October 18, 2027—over twelve months away. Discovery closes approximately July 20, 2027—nearly ten months from now. There is time for full discovery if the case proceeds past the pleading stage. *Conquest v. Camber Corp.*, No. 13-1108, 2014 WL 172500, at *1 (W.D. Tex. 2014). Moreover, the Court has discretion to control its calendar and could extend discovery if circumstances warrant.

Novo's own experience in this case confirms the absence of prejudice. Judge Brown stayed

discovery on July 27, 2026. Novo identifies no witness who became unavailable, no evidence that was lost, and no concrete litigation disadvantage resulting from that stay. The prior stay did nothing to impair Novo's ability to amend, and did not prevent Novo from pursuing the theories it now advances. The same is now true—a temporary stay pending resolution of Link's Motion will not deprive Novo of discovery on any claim that survives. It will merely defer discovery until the Court determines what claims, entities, conduct, and remedies properly remain (if any).

Novo's accusations of "dilatory conduct" do not alter that analysis. Link timely filed its Motion (pursuant to a briefing stipulation Novo agreed to and Link later extended at Novo's request), timely moved to reinstate the stay, served verified interrogatory responses, disclosed the relevant corporate relationships, and produced the operative asset-sale documents. Novo may disagree with Link's objections and legal positions, but disagreement is not prejudice. The comparative prejudice runs the other way. Without a stay, Link and multiple non-parties must incur substantial expense responding to discovery that may become irrelevant, while the Court may be required to resolve serial disputes concerning entities, jurisdictions, conduct, and remedies that may not survive the Motion. A stay preserves Novo's ability to obtain discovery on any surviving claim while avoiding potentially unnecessary expense now.

Novo's hand waving about a disclosed pre-suit transaction is mere distraction from the considerations that govern the stay analysis: the substantial threshold issues raised by the Motion, the extraordinary breadth of Novo's discovery, and the absence of any meaningful prejudice from a temporary stay.

## III. <u>CONCLUSION</u>

Link Pharmacy LLC respectfully requests that the Court reinstate the discovery stay pending resolution of Link's Motion to Dismiss.

Respectfully submitted,

*/s/ Shannon E. McClure*
Shannon E. McClure (*pro hac vice*)
BLANK ROME LLP
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103
Telephone: 215-569-5500
Facsimile: 215-569-5555
shannon.mcclure@blankrome.com

Rachael G. Pontikes (*pro hac vice*)
Amica J. Nesbitt (*pro hac vice*)
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, IL 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601
rachael.pontikes@blankrome.com
amica.nesbitt@blankrome.com

Sean D. Damon (*pro hac vice*)
BLANK ROME LLP
1825 Eye Street NW
Washington, D.C. 20006
Telephone: (202) 420-2617
Facsimile: (202) 420-2201
sean.damon@blankrome.com

E. Leon Carter
Texas Bar No. 03914300
Linda Stahl
Texas Bar No. 00798525
CARTER ARNETT STAHL + CHO
HERNANDEZ PLLC
8150 N Central Expy., Suite 500
Dallas, TX 75206
Telephone: (214) 550-8185
Facsimile: 214-550-8185
lcarter@carterarnett.com
lstahl@carterarnett.com

*Attorneys for Defendant Link Pharmacy LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 29, 2026, I caused the foregoing document to be filed with the Clerk of the Court of the United States District Court for the Northern District of Texas using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Linda R. Stahl*